UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BRAD WEINERT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )     No. 4:20-cv-00850-JAR |
| | ) |
| JULIE KEMPKER[1] | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on Petitioner Brad Weinert's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (Doc. No. 1). The motion is fully briefed and ready for disposition. For the following reasons, Petitioner's Section 2254 petition will be denied and the action dismissed.

**I.     Introduction and Background**

The evidence at trial revealed the following. On March 30, 2012 at around 5:30 P.M., Petitioner was speeding down Interstate 70, weaving in and out of traffic, when he crashed his minivan into a car driven by Adrianne Crews. (Doc. No. 13-3 at 676). Although Petitioner claimed his vehicle was hit by Ms. Crews' truck, Petitioner's vehicle had "heavy front end damage," and witnesses reported his vehicle hit Ms. Crews truck. *Id*. at 68-69. Ms. Crews' truck flipped several times as a result of the accident. Terri Bellagamba was driving down Interstate 70 at the time of the accident and witnessed Petitioner hit Ms. Crews' car. She pulled over and called 911. *Id*. at

---

[1] After filing his petition, Petitioner was released on parole. As such, Julie Kempker, the Director of the Missouri Board of Probation and Parole shall be substituted for Brian O'Connell as the party respondent. 28 U.S.C. § 2254, Rule 2.

1

684-85. Ms. Bellagamba spoke with a state trooper briefly; Petitioner then walked up to her car and asked her about her conversation with the officer. *Id*. at 686. Ms. Bellagamba did not respond, but Petitioner remained at her car window staring in at her for several minutes. *Id*. at 878-87.

State Trooper Justin Moll responded to the accident. He noticed Petitioner had red, watery eyes, slurred speech, and smelled of alcohol. *Id*. at 70. Petitioner admitted he drank six beers prior to driving. *Id*. Petitioner performed three field sobriety tests, all of which showed indications of intoxication. *Id*. at 118-19. He was then arrested for driving while intoxicated and taken to a hospital to have his blood drawn to test for blood alcohol content. Petitioner's blood was drawn at 11:09 P.M. and again at 12:19 A.M. The first test resulted in a 0.14 BAC and the second resulted in a 0.119 BAC. *Id*. at 618-19.

At the trial, Ms. Crews testified about the extent of her injuries. She described the pain of the injury as "the worst pain I ever had in my life." *Id*. at 711. The prosecutor asked her what injuries she had as a result of the crash and Ms. Crews responded "I had a concussion. I broke my back teeth. I bruised internal organs. I -- my abdominal walls separated, I had muscle separation in my stomach. My back had all kinds of things messed up with my back, my neck, my head. My hips hurt. I had bruises from my face all the way down to my ankles." *Id*. at 712. Additionally, Ms. Crews' bladder was damaged. She was incontinent and urinated blood for 6 weeks. She also testified about the extreme extent of her pain: "I'm in pain right now…I am in extreme pain most of the time." *Id*.

Ms. Bellagamba testified at the trial about the trauma she experienced as a result of the accident. She said the accident impacted her "driving" and "if I'm not in control of the car, if I'm riding with somebody else, I can't handle it…I feel like I have to be in control. I'm a nervous wreck. I want to be on the floorboard telling them what to do from point A to point B." *Id*. at 689.

2

During closing arguments, the prosecuting attorney showed the jury six beer bottles, and explained the bottles were demonstrative. The trial court allowed the prosecutor to use the beers provided the jury "understand that these are not any beers that were in evidence." *Id*. at 749. Trial counsel objected to Ms. Crews' and Ms. Bellagamba's testimony about their injuries as well as the prosecuting attorney's use of the six beer bottles.

The jury found Petitioner guilty of driving while intoxicated pursuant to Rev. Stat. Mo. §557.010. The charge has two elements: first, the person must have operated a motor vehicle and second, the person must be intoxicated while operating the vehicle. The prosecutor also sought to enhance Petitioner's sentence by showing he is a chronic offender under Rev. Stat. Mo. § 577.023. To prove Petitioner is a chronic offender, the prosecutor presented non-certified printouts from the Driving While Intoxicated Tracking System (DWITS) maintained by the Missouri state highway patrol. (Doc. No. 13-3 at 160-64). The printouts indicated Petitioner has five prior DWI convictions and one conviction of excessive blood alcohol content. Trial counsel objected to the introduction of the DWITS records because the records were not authenticated. *Id*. The trial judge overruled the objection, finding the printouts were sufficient proof. *Id*. at 163. Based on the DWITS records, the judge found Petitioner is a chronic offender and enhanced his sentence from a Class B misdemeanor to a Class B felony. Petitioner was sentenced to eleven years. Since filing, Petitioner has been released on parole.[2]

   a. **Direct appeal**

Petitioner raised three points on direct appeal: (1) the trial court abused its discretion in permitting Ms. Crews to testify about the severity of the injuries she suffered as a result of the

---

[2] Although Petitioner is no longer in physical custody, his petition has not been rendered moot. The imposition of parole conditions constitutes "custody" for the purposes of 28 U.S.C. § 2254. *Jones v. Cunningham*, 371 U.S. 236 (1963).

3

accident, (2) the trial court abused its discretion in permitting Ms. Bellagamba to testify about her emotional distress, and (3) the trial court erred in allowing the prosecutor to display the six beer bottles during closing argument. On October 25, 2016, the Missouri Court of Appeals, Eastern District, determined Petitioner could not demonstrate prejudice on his first and second claims because he failed to show "the challenged admission of [Ms. Crews' and Ms. Bellagamba's] injuries is dispositive." (Doc. No. 13-7 at 6). The appellate court also found that Petitioner conceded the first element of § 577.010—that he operated a motor vehicle—and there was "overwhelming evidence adduced during the course of trial" showing the second element, that Petitioner was intoxicated while operating the motor vehicle, including the blood alcohol tests and Petitioner's admission that he drank six beers prior to driving. *Id*. at 5-6. The appellate court further found against Petitioner on the third claim, determining it "need not discern the propriety of the trial court's ruling that permitted the State to display six beer bottles, for demonstrative purposes, during closing arguments, because [Petitioner], again, cannot demonstrate prejudice." *Id*. at 10.

### b. Post-Conviction Court

Petitioner alleged in his motion for post-conviction relief that his appellate counsel was ineffective for failing to assert on direct appeal that the trial court erred in accepting unauthenticated evidence from the DWITS as evidence that Petitioner is a chronic offender pursuant to Mo. Rev. Stat. § 577.023. On August 15, 2017, after the Eastern District Court of Appeals denied Petitioner's direct appeal, the Missouri Court of Appeals, Western District, determined § 577.023 did not eliminate the general foundational requirements for admissibility of evidence, and as such an unauthenticated DWITS record printout is inadmissible. *State v. Pylypczuk*, 527 S.W.3d 96, 102 (Mo. Ct. App. 2017).

4

The post-conviction court held an evidentiary hearing at which Petitioner's appellate counsel, William Swift, and Petitioner testified. Mr. Swift testified that, based on his reading of the statute and review of the trial record, the claim did not have as high a chance of success as the claims he chose to raise. (Doc. No. 13-10 at 13-45). The post-conviction court found appellate counsel acted reasonably in not raising the DWITS argument. (Doc. No. 13-9 at 124). No appellate court had yet interpreted the language of §577.023 regarding authentication and the reading given by appellate counsel was customarily used at the trial level by both counsel and trial courts. *Id*. Furthermore, the post-conviction court found Petitioner had failed to show prejudice because he "has not alleged facts or submitted evidence to establish a reasonable probability that the Eastern District Court of Appeals would have reversed the trial court's admission of the DWITS record," as the Eastern District has not yet interpreted the language at issue. *Id*. at 125.

c. **Post-Conviction Appeal**

Petitioner appealed the post-conviction court's determination, arguing the court erred in finding appellate counsel's actions were reasonable, as a competent attorney would have raised the DWITS argument on appeal. The appellate court upheld the post-conviction court's decision. It found that Petitioner has failed to show the DWITS claim was "so obvious any reasonably competent attorney would have asserted it at the time of Movant's direct appeal." (Doc. No. 13-13 at 1). The post-conviction appellate court found *Pylypczuk* did not render appellate counsel's decision clearly erroneous because he "could not have been expected to predict the clarification under *Pylypczuk* when another reasonable interpretation existed." *Id*. at 10. However, the appellate court agreed with Petitioner that "it is now clear the DWITS claim would likely have resulted in a reduced sentence." *Id*. at 11.

## II. Analysis

A district court "shall entertain an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Federal courts may not grant habeas relief on a claim that has been decided on the merits in State court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

"A state court's decision is contrary to . . . clearly established law if it applies a rule that contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision . . . and nevertheless arrives at a [different] result." *Cagle v. Norris*, 474 F.3d 1090, 1095 (8th Cir. 2007) (quoting *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (internal quotation marks omitted)). A state court "unreasonably applies" federal law when it "identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular state prisoner's case," or "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams v. Taylor*, 529 U.S. 362, 407 (2000). A state court decision may be considered an unreasonable determination "only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record." *Ryan v. Clarke*, 387 F.3d 785, 790-791 (8th Cir. 2004) (citing 28 U.S.C. § 2254(e)(1)). A state court's factual findings are presumed

6

to be correct. 28 U.S.C. § 2254(e)(1); *Wood v. Allen*, 558 U.S. 290, 293 (2010). Review under § 2254(d)(1) is limited to the record before the state court that adjudicated the claim on the merits. *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Clear and convincing evidence that state court factual findings lack evidentiary support is required to grant habeas relief. 28 U.S.C. § 2254(e)(1); *Wood*, 558 U.S. at 293.

### III. Discussion

Petitioner raises four grounds for reversal: 1) the trial court erred in allowing Ms. Crews to testify about the severity of her injuries; 2) the trial court erred in allowing Ms. Bellagamba to testify about the severe emotional trauma she experienced as a result of the car accident; 3) the trial court erred in allowing the prosecuting attorney to show the jury six beer bottles that were not admitted into evidence; and 4) appellate counsel was ineffective for failing to argue the trial court erred in admitting the uncertified DWITS records.

#### a. Trial Court Error

The Court will address Petitioner's first three claims together, as all three claims relate to the admission of evidence during the trial. In his first two claims, Petitioner claims the trial court erred in admitting certain testimony from Ms. Crews and Ms. Bellagamba. In his third claim, he claims the trial court erred in allowing the prosecuting attorney to use six empty beer bottles for demonstrative purposes.

As the Supreme Court has emphasized, "it is not the province of a federal habeas court to reexamine state-court determinations on state-law questions," such as the admissibility of evidence at trial. *See Estelle v. McGuire,* 502 U.S. 62, 67-68 (1991). "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." *Id*. at 68. Evidentiary issues can, however, form the basis for habeas relief if the

7

error constitutes an independent constitutional violation. *See Bounds v. Delo,* 151 F.3d 1116, 1119 (8th Cir. 1998). "A state court's evidentiary rulings can form the basis for federal habeas relief under the due process clause only when they were so conspicuously prejudicial or of such magnitude as to fatally infect the trial and deprive the defendant of due process." *Id.* (quoting *Parker v. Bowersox,* 94 F.3d 458, 460 (8th Cir. 1996)). To meet this standard, a petitioner must show a reasonable probability that the evidentiary errors affected the trial's outcome. *See Meadows v. Delo,* 99 F.3d 280, 283 (8th Cir. 1996).

The Court concludes that the introduction of the evidence at issue did not amount to a denial of Petitioner's right to due process. In order to show a violation of the right to due process, Petitioner "must show a reasonable probability that the error affected the trial's outcome." *Id.* (citation omitted). Where the conviction is based on sufficient evidence outside the challenged evidence, a petitioner cannot show that the error affected the trial's outcome and therefore is not entitled to relief. *See Troupe v. Groose*, 72 F.3d 75, 76 (8th Cir. 1995) ("Given the other evidence at trial, [the court] cannot say the admission of [petitioner]'s earlier conviction affected the trial's outcome.") (internal citation omitted).

Petitioner's conviction is sufficiently grounded in other evidence and therefore he cannot show prejudice. The jury found Petitioner guilty of driving while intoxicated pursuant to Rev. Stat. Mo. § 557.010. The charge has two elements; first, the defendant must have operated a motor vehicle and second, the defendant must be intoxicated while operating the vehicle. The Missouri Court of Appeals found "overwhelming evidence" proving the elements of the crime. (Doc. No. 13-7 at 6). The Court agrees that the evidence adduced at trial is more than sufficient to prove both elements of the crime. Petitioner does not dispute the first element, that he was operating the vehicle. There was significant evidence introduced at trial to show Petitioner was intoxicated,

including two blood alcohol content tests administered hours after the incident showing Petitioner's BAC was 0.14 and later 0.119, testimony that Petitioner failed three field sobriety tests administered immediately after the accident, and testimony that Petitioner told an officer at the scene of the accident he had recently drunk six beers. Given the extensive evidence at the trial, Petitioner cannot show a reasonable probability of a different outcome. As such, Grounds 1, 2, and 3 will be denied.

   b.  **Ineffective Assistance of Counsel**

Petitioner next argues that his appellate counsel was ineffective for failing to raise an obvious trial court error, the admission of the unauthenticated DWITS records. Petitioner concedes that appellate counsel was not ineffective for failing to raise the other ten preserved grounds for appeal. Respondent argues that Petitioner is unable to show his counsel's performance was objectively unreasonable.

To prevail on a claim alleging ineffective assistance of counsel, the movant must satisfy the two-part test of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, (1984). Under *Strickland*, the movant must first show that the counsel's performance was deficient. *Id*. at 687. This requires the movant to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.* Secondly, the movant must demonstrate that the deficient performance prejudiced the defense so as "to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A defendant attempting to prove ineffective assistance of

9

counsel within the context of a section 2255 pleading faces a heavy burden. *See United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996).

The Eighth Circuit has described the two-fold test as follows: (1) counsel's representation fell below an objective standard of reasonableness; and (2) but for this ineffective assistance, there is a reasonable probability that the outcome of the trial would have been different. *Rogers v. United States*, 1 F.3d 697, 700 (8th Cir. 1993). More recently the Eighth Circuit has described the *Strickland* test as follows: "[w]hether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation. If we can answer 'no' to either question, then we need not address the other part of the test." *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000). For appellate counsel, the first prong requires a showing "that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them." *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 764, 145 L. Ed. 2d 756 (2000).

When evaluating counsel's performance, the court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. Counsel's performance is considered objectively, and gauged "whether it was reasonable 'under prevailing professional norms' and 'considering all the circumstances.'" *Fields*, 201 F.3d at 1027 (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064-65), Counsel's challenged conduct is viewed as of the time of his representation, "[a]nd we avoid making judgments based on hindsight." *Fields*, 201 F.3d at 1027. "The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Harrington v. Richter*, 562 U.S. 86, 105, 131 S. Ct. 770, 788 (2011) (internal citations and quotations omitted).

The parties dispute whether the "doubly" deferential standard described in *Richter* applies to this case. Petitioner argues the standard of review only applies in cases where a federal court reviews a state court decision that is "unaccompanied by an explanation." *Id*. at 98, 131 S. Ct. 784. Petitioner misreads *Richter*. The Supreme Court stated in *Richter* that when "a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id*. However, the doubly deferential standard described in *Richter* is not tied to whether the state court explained its decision; it applies where, as here, a federal court reviews a state court's evaluation of counsel's performance. *See Franklin v. Hawley*, 879 F.3d 307, 310 (8th Cir. 2018) (to succeed on an ineffective assistance of counsel claim under the AEDPA, a petitioner must meet a doubly deferential standard). To the extent Petitioner argues the Court cannot affirm the state court on a basis not contained in its opinion, as described below, the Court finds the reasoning of the state court was sound and as such it need not consider alternative bases to affirm its decision.

Petitioner argues that his counsel was ineffective for failing to assert that the DWITS records require authentication pursuant to § 577.023. The relevant portion of § 577.023 states:

> Evidence offered as proof of the defendant's status as a… chronic offender … shall include but not be limited to evidence of findings of guilt received by a search of the records of the Missouri uniform law enforcement system, including criminal history records from the central repository or records from the driving while intoxicated tracking system (DWITS) maintained by the Missouri state highway patrol, or the certified driving record maintained by the Missouri department of revenue.

Mo. Rev. Stat. § 577.023.

On August 15, 2017, almost a year after the Missouri Court of Appeals issued its order affirming the judgment of Petitioner's conviction on October 25, 2016, the Missouri Court of Appeals for the Western District determined DWITS records must be authenticated to serve as evidence of a prior conviction under § 577.010. *See Pylypczuk*, 527 S.W. 3d 96.

11

In *Pylypczuk*, the defendant was convicted of driving while intoxicated in violation of § 577.010. *Id*. To prove he was a repeat offender, the State introduced into evidence a printout, which purported to be a record taken from the DWITS. The printout was unauthenticated. The State argued that pursuant to § 577.023, the DWITS record could be admitted without any foundation. The *Pylypczuk* court found that nothing in § 577.023 eliminates "the general foundational requirement for admission of DWITS records," and therefore the printout could not serve as evidence that the defendant was a repeat offender unless it was authenticated. *Id*. at 101. Respondent does not dispute that, had Petitioner's appellate counsel raised this point on appeal, he would have been entitled to relief under *Pylypczuk*. Instead, Respondent argues that Petitioner has not shown appellate counsel was deficient for failing to raise the claim.

Petitioner claims that the error was obvious, and as such appellate counsel was unreasonable for failing to raise the claim. He points out that, although *Pylypczuk* had not yet been decided, no appellate court had held the DWITS record did not need to be authenticated. Petitioner argues that, as the *Pylypczuk* court noted, prior interpretations of § 577.023 explain that the purpose of the statute is to identify the types of evidence that are sufficient to establish a prior conviction; he further claims these cases show DWITS printouts require authentication. *See State v. Thomas*, 969 S.W.2d 354, 356 (Mo. Ct. App. 1998) (holding Department of Revenue records are competent evidence to prove a defendant is a persistent offender pursuant to § 577.023); *State v. Miller*, 153 S.W.3d 333, 337–38 (Mo. Ct. App. 2005) (finding § 577.023 "demonstrates clear legislative intent to establish the minimum evidentiary burden" to establish predicate offenses for an enhanced conviction). Moreover, Petitioner argues the Missouri "legislature generally reflects its intent to omit certain evidence from basic foundational requirements with language such as 'shall be admissible as evidence in all courts of this state.'" *Pylypczuk*, 527 S.W.3d at 99–100 (quoting

*Hadlock v. Dir. of Revenue*, 860 S.W.2d 335, 338 (Mo. 1993) *superseded by statute as recognized in Mills v. Dir. of Revenue*, 964 S.W.2d 873, 875 (Mo. Ct. App. 1998)). Section 577.023 does not contain such language. Finally, Petitioner claims appellate counsel was ineffective for choosing to raise three evidentiary arguments, which are subject to an abuse of discretion standard, rather than the challenge to the "chronic offender" enhancement, which is subject to a lesser standard of review.

The Court cannot say appellate counsel's actions were objectively unreasonable for failing to raise the issue of DWITS authenticity on appeal. The post-conviction court and the post-conviction appellate court found counsel acted reasonably. No appellate court had yet interpreted the language of §577.023. Petitioner argues that authority for the rule that DWITS printouts require authentication before they may be admitted as proof of prior offenses predated his appeal. However, Petitioner fails to identify any caselaw in support of this proposition, nor can the Court find any.[3] Appellate counsel reviewed the language of the statute and determined the claim was weaker than those he chose to raise. As the postconviction appellate court noted, §577.023 explains that "records from the driving while intoxicated tracking system (DWITS), or the *certified* driving record maintained by the Missouri department of revenue" may be used as evidence of prior offenses. Mo. Rev. Stat. § 577.023; (Doc. No. 13-13 at 8). Appellate counsel could have reasonably concluded that by specifying driving records, but not DWITS records, must be certified, the legislature intended to eliminate the need to authenticate DWITS records. (Doc. No. 13-3 at 9).

---

[3]  The cases referenced by *Pylypczuk* explain that one purpose of §577.023 was establishing the type of evidence sufficient to prove a prior offense. These cases do not determine whether §577.023 eliminates the need to authenticate such evidence. *See Thomas*, 969 S.W.2d 354; *Miller*, 153 S.W.3d 333.

Furthermore, the post-conviction court found it was common practice of both trial counsel and trial courts to rely upon unauthenticated DWITS printouts as proof of prior offenses. Petitioner argues appellate counsel erred in declining to raise the claim because it was subject to a lower standard of review. Appellate counsel considered the claims he could bring and reasonably determined the DWITS claim was not as strong as the evidentiary claims. Counsel need not raise every nonfrivolous issue on appeal. The Court cannot say appellate counsel acted unreasonably by failing to raise the DWITS issue on appeal. Therefore, Ground 4 is denied.

### IV. Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner Brad Weinert's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. No. 1) is **DENIED.**

**IT IS FURTHER ORDERED** that the Court finds that, because Petitioner cannot make a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. *See Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998).

A judgment dismissing this case is filed herewith.

Dated this 6th day of May, 2022.

                                                **JOHN A. ROSS**
                                                **UNITED STATES DISTRICT JUDGE**